IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ASSURANCE COMPANY OF AMERICA, et al. | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Case No.:  1:05-cv-01301-AMD |
| | * | |
| YORK INTERNATIONAL, INC., et al. | * | |
| Defendants | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

**REPLY IN SUPPORT OF DEWITT'S
MOTION FOR SUMMARY JUDGMENT**

Defendants, David W. DeWitt t/a DeWitt Plumbing, Heating & Air Conditioning and David W. DeWitt (hereinafter collectively "DeWitt"), by their attorneys, Robert L. Hebb, Christopher J. Lyon and Semmes, Bowen & Semmes, file this Reply in support of their Motion for Summary Judgment.

**I. INTRODUCTION**

The crux of Plaintiffs' claims against DeWitt, as set forth in their Amended Complaint, is that DeWitt failed to install the furnace in a workmanlike manner. Pls.' Am. Comp'l, ¶¶ 88, 99, 104.  The facts show that DeWitt completed the installation of the furnace in a workmanlike manner,[1] and Plaintiffs do not dispute this in their Opposition.

Instead, like Plaintiffs' experts' varying opinions as to the cause of the fire, Plaintiffs now contend that DeWitt had a duty to "install and *maintain*" the furnace in a reasonable and safe

---

[1] Plaintiff's expert, Daryl Ebersole, testified that, other than taking steps to prevent use of the furnace during construction, DeWitt's installation of the furnace was error-free. (*See* Ebersole Dep. at p. 188 attached hereto as Ex. A.)

Case 1:05-cv-01301-AMD   Document 90   Filed 07/18/07   Page 2 of 8

manner. Pls.' Opp'n, p. 54 (emphasis added). There is no evidence, however, that DeWitt contracted with Mortimer Builders ("Mortimer") to maintain the furnace after it was installed. To the contrary, the President of Mortimer testified that it is Mortimer that maintains the air filters to the furnaces. Plaintiffs' attempt to broaden the scope of DeWitt's duties in order to keep DeWitt in this case should be rejected, and summary judgment should be entered in DeWitt's favor.

## II. ARGUMENT

Plaintiffs' arguments with respect to DeWitt's involvement and DeWitt's purported liability in this case are two-fold. First, Plaintiffs' expert, Daryl Ebersole, contends that DeWitt should have prevented the use of the furnace during construction. This theory of liability fails, however, because DeWitt owed no contractual or common law duty to the Plaintiffs to monitor the Dansey House and ensure that third parties would not use the furnace. Second, and recently raised in their Opposition to Dewitt's Motion for Summary Judgment, Plaintiffs contend that DeWitt had a duty to maintain the furnace. This, however, is contrary to the evidence.

Before turning to Plaintiffs' two arguments, it is pointed out that Plaintiffs grossly mischaracterizes DeWitt's position in this case. In their Statement of the Case, Plaintiffs contend, ". . . DeWitt claims it owed no duty of care to Dansey in the performance of its work . . . ." Pls.' Opp'n, p. 39. This is not DeWitt's position. DeWitt stands by the work for which it contracted with Mortimer to perform. The agreed-upon work was performed properly, and Plaintiff's own expert testified that the mechanical installation of the furnace was error-free. (*See supra* fn. 1.) It is Plaintiffs' description of the breadth of DeWitt's obligations on the project with which DeWitt disagrees. DeWitt was not responsible to ensure that others did not use the furnace while the home was under construction or to maintain the furnace after its

installation.

### A. DeWitt owed no duty to monitor the Dansey House and ensure that third parties would not use the furnace while the home was under construction.

As set forth in DeWitt's Memorandum in Support of its Motion for Summary Judgment, Plaintiffs' expert, Daryl Ebersole, opined that DeWitt contributed to the cause of the fire because he "did not take steps to preclude" use of the furnace by Mortimer while the Dansey house was under construction. (Ex. A, p. 180.) Ebersole testified that DeWitt could have left the power off to the furnace, locked off the gas lines or disconnected the thermostat. (*See* DeWitt's Memo. in support of Mot., p. 6.)

Notwithstanding that Ebersole could point to no industry standard, building code or instruction manual requiring an installer to take the suggested measures,[2] the notion that DeWitt owed a duty to prevent others from using the furnace is without legal basis. While Plaintiffs state in their Opposition that they "do not argue that DeWitt is liable to them for the actions of Mortimer" (Pls.' Opp'n, p. 54.), that is precisely the reason their expert faults DeWitt. Ebersole testified:

> Q. And as I was saying, we met earlier today. I represent David DeWitt and his company, and essentially I have heard your opinion with respect to your theory of the cause and origin of the fire.
>
> And what part, if any, did David DeWitt or his company have in contributing to the fire, in your opinion. Do you have any opinions on that?
>
> A. Yes, I do.
>
> Q. And what are those?

---

[2] As part of DeWitt's Motion for Summary Judgment, DeWitt requests that the Court prohibit Ebersole's testimony regarding the suggested measures because the testimony is without foundation. (*See* DeWitt's Memo. in support of Mot., pp. 7-8.)

>    A. The furnace was being used in a home that was under construction, and he had knowledge that they should not be but did not take steps to preclude their use.
>
>    Q. Anything else?
>
>    A. Nothing else that I can think of at this moment.
>
>    Q. You testified earlier today that you have reached all the opinions you have in this case as we sit here today. That's true?
>
>    A. I'm sorry. Could you, please, repeat that.
>
>    Q. You had testified earlier today that you had reached all the opinions that you intend to offer in this case. That's true?
>
>    A. Yes. I believe that's true.

(Ex. A, p. 180-81.) Ebersole faults DeWitt for failing to prevent Mortimer from using the furnace while Mortimer continued construction on the Dansey house. It is Plaintiffs' position that this use of the furnace caused its air filter to become clogged ultimately contributing to the cause of the fire.

The mere fact that one "'realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.'"[3] *Lamb v. Hopkins*, 303 Md. 236, 241, 492 A.2d 1297, 1300 (1985) (quoting Restatement (Second) of Torts, § 314). It is "the general rule that '[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another . . . ." *Id.* (quoting Restatement (Second) of Torts, § 315).

David DeWitt agreed to fabricate and install duct work for a heating system, which he

---

[3] DeWitt certainly takes issue with Plaintiffs' theory that the use of the furnace while the Dansey House was under construction contributed to the cause of the fire. But for purposes of DeWitt's motion only, even if such use could have contributed to the fire, DeWitt had no duty to prevent its use.

did. He agreed to hook gas lines up to the furnaces, which he did. He agreed to test the gas lines and the furnaces to ensure proper function, and he did. David DeWitt never agreed to monitor the Dancey House. He never agreed to ensure that the heating system installed was not used during construction. This was neither part of any contract, nor is there a common law duty requiring DeWitt to do so. DeWitt met the responsibilities he agreed to take on and summary judgment should be entered in DeWitt's favor.

      **B.**      **DeWitt owed no duty to maintain the furnace it installed at the Dansey House**.

Citing snippets of deposition testimony, Plaintiffs try to fashion and impose upon DeWitt a duty to maintain the furnaces including maintenance of the furnaces' air filters. A review, however, of the deposition testimony of Mortmer's President makes it clear that no such duty existed. DeWitt never agreed to take on the responsibility of maintaining the furnaces or their air filters.

In response to questions from Plaintiffs' counsel, Gregory Mortimer testified that Mortimer maintains the air filters to the furnaces during construction. Mr. Mortimer testified:

> Q. Were the covers of the furnaces normally kept in place?
>
> A. Explanation. Covers as far as the cold air returns or the front of the furnace?
>
> Q. Both.
>
> A. The cold air returns usually had an industrial filter on them.
>
> Q. Okay.
>
> A. *We maintain them*--during construction, they could get dusty and *we have always maintained those*. The furnaces were in a controlled room, a furnace room with a door.
>
>     Other than that, the covers on the furnaces would be off if

>Davey DeWitt was working, potentially, but normally they would be on.

(*See* Mortimer Dep. at pp. 49-50 attached hereto as Ex. B (emphasis added).)

In response to further questioning regarding maintenance of the air filters, Mr. Mortimer testified:

>Q. Okay. You earlier testified that--well, there is an issue as to running the furnace while the building is under construction because, I guess, of the debris and the sawdust and the mud dust floating in the air being sucked into the furnace.
>
>How do you prevent that type of debris form being sucked into the furnace?
>
>A. We keep the job sites very clean and Davey puts on a thick industrial filter.
>
>Q. When does he put that filter on?
>
>A. Immediately.
>
>Q. You indicated that you maintain the furnaces by changing the filters?
>
>A. That is correct. If they become too dirty, the industrial filters, typically we shake them out and if they get too dirty. That has happened on occasion.
>
>Q. Who does that?
>
>A. Typically that would probably be Randall Lee at the time. Or Carl Lee. Either/or.
>
>Q. Would you call David DeWitt to come back to change the filters or to shake out the filter?
>
>A. Sometimes we would call him to put new filters on. Or he would do it on his own accord.
>
>Q. Did that occur in this case?
>
>A. I have no knowledge of that.

(Ex. B, p. 70.)

Mr. Mortimer's testimony helps define the scope of DeWitt's agreement with Mortimer. Mortimer contracted with DeWitt to install the furnaces, not maintain them. Mortimer maintained the furnaces and their air filters, they "have always maintained those." (Ex. B, pp. 49-50.) This is consistent with the fact that the furnace installation progressed in stages, which meant that DeWitt was not on the construction site daily.

Per Mr. Mortimer's testimony, DeWitt agreed to install the furnaces, install the duct work, test the furnaces and gas lines, and finally to install the vent covers. (Ex. B, p. 68.) When construction of the Dansey house progressed to the point where it was ready for the next stage of the furnace installation, Mortimer would call DeWitt to come out and perform that particular work. (Ex. B, p. 69.) There was no agreement that DeWitt would maintain the furnaces and the air filters. It is in this regard that the cases cited by Plaintiffs are distinguishable.[4]

There is no evidence suggesting that Mortimer requested at any time that DeWitt change the air filter at the Dansey house. Because DeWitt's only responsibility was to install the furnaces, which he did, and not to maintain them, judgment should be entered in DeWitt's favor.

### III. CONCLUSION

Plaintiffs claims against DeWitt are premised upon duties DeWitt did not owe. There was no agreement and no common law duty requiring DeWitt to prevent others from using the

---

[4] *See Glanzer v. Shephard*, 233 N.Y. 236 (1922)(weigher of goods owed duty to ultimate purchaser of goods because weigher of goods agreed to take on responsibility of weighing goods); *MacPherson v. Buick Motor Co.*, 111 N.E. 1050 (N.Y. 1916)(manufacturer of automobile owed duty to ultimate purchaser because manufacturer took on responsibility to manufacture automobile); *Johnson v. Oman Constr. Co.*, 519 S.W.2d 782 (Tenn. 1975)(contractor potentially liable to injured third-party because contractor took on responsibility of constructing barricade in roadway); *Chicago Title Ins. Co. v. Allfirst Bank*, 394 Md. 270 (2006)(depository bank potentially liable to drawer for mis-deposited check because bank took on responsibility of negotiating checks).

furnaces it installed. There was no agreement and no common law duty requiring DeWitt to maintain the furnaces, or the furnaces' air filters. In fact, the evidence shows that it was Mortimer who would maintain the air filters. For the reasons stated herein and in DeWitt's Memorandum in Support of its Motion for Summary Judgment, and for any reasons stated by the Co-Defendants that are consistent with DeWitt's position, summary judgment should be entered in favor of DeWitt on all of Plaintiffs' claims.

Respectfully submitted,

   /s/
Robert L. Hebb, Federal Bar No.: 23425
Christopher J. Lyon, Federal Bar No: 27443
Semmes, Bowen & Semmes
a Professional Corporation
250 W. Pratt Street, 16th Floor
Baltimore, Maryland  21201
(410) 539-5040

Attorneys for Defendants,
David W. DeWitt t/a DeWitt Plumbing,
Heating & Air Conditioning and
David W. DeWitt

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of July, 2007, a copy of the foregoing Reply in Support of DeWitt's Motion for Summary Judgment was filed electronically with the Court and served electronically on William C. Parler, Jr., Esquire, Parler & Wobber, LLP, 406 East Joppa Road, Towson, Maryland 21286, Attorney for Plaintiffs; Timothy L. Mullin, Jr., Esquire, Miles & Stockbridge, P.C., 10 Light Street, Baltimore, Maryland 21202, Attorney for Defendant, York International, Inc.; and David P. Bukow, Esquire, Law Offices of Guido Porcarelli, 200 International Circle, Suite 1500, Hunt Valley, Maryland 21030, Attorney for Defendant, Gregory D. Mortimer Properties, Inc.

   /s/
Robert L. Hebb